UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM SAUNDERS,<br>Plaintiff,<br><br>v.<br><br>LIEUTENANT BUSHA, et al.,<br>Defendants. | No. 3:21-cv-472 (SRU) |

**INITIAL REVIEW ORDER**

William Saunders is a sentenced state prisoner currently confined at Osborn Correctional Institution ("Osborn").[1] On April 6, 2021, Saunders filed this *pro se* action pursuant to 42 U.S.C. § 1983. *See* Compl., Doc. No. 1.[2] Saunders alleges that seven employees of the Connecticut Department of Correction ("DOC") who worked at Osborn—Lieutenant Busha and six officers identified only as John Doe—violated his constitutional and state law rights during an incident that occurred in January 2021. I will refer to the six unnamed defendants as the "Doe defendants," and I will refer to all seven defendants as "the Defendants." Saunders sues the Defendants in their individual capacities for $1.7 million and in their official capacities for injunctive relief. *See id.* at ¶¶ 31–32. For the following reasons, Saunders' complaint is **dismissed in part**.

   **I.     Standard of Review**

---

[1]    Pursuant to Fed. R. Evid. 201(b), I take judicial notice of the fact that Saunders is a sentenced state inmate. *See* Fed. R. Evid. 201(b)(2) (explaining that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Inmate Information*, CONN. ST. DEP'T OF CORR., http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=319069 (last visited June 28, 2021).
[2]    After I denied without prejudice Saunders' motion to proceed *in forma pauperis*, doc. no. 8, Saunders paid the Court's $402 civil case filing fee.

Pursuant to 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of those complaints that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II. Factual Background

Sometime in late December 2020, Saunders was walking from the D-Block (where he was housed) to the medical department. *See* Compl., Doc. No. 1, at ¶ 10. Saunders had permission to do so. *See id.* Still, Lieutenant Busha and two other unidentified correctional officers stopped Saunders. *See id.* Lieutenant Busha asked Saunders where he was going. *See id.* According to Saunders, Lieutenant Busha's question was pointless because he knew that Saunders had permission to travel from the D-Block to the medical department. *See id.* at ¶ 11. In any event, Saunders told Lieutenant Busha that he was going to medical and gave Lieutenant Busha his pass. *See id.* at ¶ 12.

Apparently, Lieutenant Busha took offense to Saunders' response. *See id.*[3] In response to Lieutenant Busha's further questioning, Saunders responded "yes, sir" and "no, sir." *See id.* at ¶ 13. Mistakenly interpreting Saunders' replies as sarcastic, Lieutenant Busha said that "he will make me pay for being sarcastic." *Id.* Lieutenant Busha also said that the next time he encountered Saunders, Lieutenant Busha "won't be talking," which Saunders took to mean that Lieutenant Busha "would physically hurt me nex[t] time." *Id.* Saunders told his Block officer about this encounter, but the Block officer "said that I was on my own." *Id.*

On January 17, 2021, Saunders got into a fight and was sent into segregated housing in the Restrictive Housing Unit ("RHU") as a result. *See id.* at ¶ 14. There, Saunders decided to go on a hunger strike because (1) he "didn't feel safe at [O]sborn due to Lt. Busha threat," (2) Saunders "had mental health issues which were not being address[ed]," and (3) "no one would help me after I told them that I was threatened by Lt. Busha." *Id.* Saunders' hunger strike lasted three days—from January 18 to 21. *See id.* at ¶ 15.

On January 21, the Block officer in F-Block came to the RHU and told Saunders to get dressed because he needed to go to medical. *See id.* at ¶ 16. Saunders readily assented, went to medical, and had a physical exam. *See id.* at ¶ 17. At all times during the exam, Saunders was hand-cuffed and shackled and was surrounded by at least three correctional officers. *See id.* at ¶ 25. After the exam was over, correctional staff told Saunders that he "would be placed on 'Behavioral status observation.'" *Id.* at ¶ 17. At that point, Saunders "told the staff I wont eat until I get help." *Id.* at ¶ 18. Saunders was then "threatened to be placed in four point restraints"

---

[3] Here, Saunders describes how Lieutenant Busha "has a history" at Osborn of "oppress[ing], annoy[ing], and provok[ing] inmates to deliberately cause a disturbance within the facility so that he can place inmates in the hole/segregation." Compl., Doc. No. 1, at ¶ 12. Saunders also accuses Lieutenant Busha of "exhibit[ing] racially motivated behavior towards African American inmates by using [r]acial slur[]s and calling Black inmates (monkeys) and being unreasonably aggressive with inmates without just cause." *Id.*

3

unless he ate. *Id.* Saunders "told the staff respectfully that I won't eat." *Id.* Again, Saunders "told the staff that I will not end the hunger strike until my needs were addressed." *Id.*

Lieutenant Busha and "his correctional officers" then came into the treatment room. *See id.* at ¶ 19. Saunders had been seated; Lieutenant Busha told Saunders to stand. *See id.* Saunders claims that Lieutenant Busha "and other correctional officers had thrown me out the chair," even though he "was already hand-cuffed" and shackled and "was not fighting the officers." *See id*. Saunders alleges that "after my body had hit the floor," "Lt. Busha [] maced me." *Id.* Saunders was handcuffed, with his hands behind his back. *See id.* Still, Lieutenant Busha "maced me repeatedly." *Id.*

Saunders was then carried away into the isolation unit. *See id.* While Saunders was being carried away, "[c]orrectional officers ram[med] my head into the walls, around the corners," with the result that Saunders "passed out at least (2) times before I was placed in four point restraint." *Id.* As a result of this incident, Saunders claims that his "face and head, [a]rms, [and] back" were "badly swollen, bruised and in pain for days." *Id.* at ¶ 22. Saunders also claims that he "still suffers from severe migraines." *Id.* at ¶ 25.

On January 23, "[a]ll correctional officers involved" told Saunders that he "got what [he] deserved" and warned Saunders "to not ever mess with their crew." *Id.* at ¶ 24.

### III. Discussion

Saunders formally asserts four counts for relief. Count One alleges "Excessive force" against the Defendants for "spraying the plaintiff in the face with a can of mace while the plaintiff was hand-cuffed from behind the back" and for "[r]am[ming] the plaintiff[']s head into walls intentionally to cause the plaintiff to be severely injured." *Id.* at ¶ 27. Count Two asserts an "unconstitutional condition of confinement" against the Defendants for the same conduct. *See*

4

*id.* at ¶ 28. In Count Three, Saunders claims that the Defendants subjected him to "cruel and unusual punishment by spraying the plaintiff in the face with mace." *Id.* at ¶ 29. And, in Count Four, Saunders claims that the Defendants caused him "Intentional Infliction of Emotional Distress" by "spraying the plaintiff with mace in his face while he was hand-cuffed and being obedient to all orders." *Id.* at ¶ 30. As a result, Saunders "was and has been in fear of his life." *Id.* Saunders thus seeks $1.7 million in damages,[4] asks that the Defendants pay for the cost of this lawsuit, and requests that I "order the defendants to carry out [] without delay to have a mental health [r]epresentative to meaningfully assist plaintiff with mental health help." *Id.* at ¶¶ 31–32. In my view, less formally, Saunders also may assert: (1) an Eighth Amendment claim for deliberate indifference to health and safety, (2) a First Amendment retaliation claim, and (3) state law claims for assault and battery. *See id.* at ¶ 25 (mentioning "deliberate Indifference"); *id.* at 1 (introductory paragraph mentioning "[a]ssault and battery"). Certain of Saunders' claims survive initial review, but most do not.

    A.    <u>The Doe Defendants</u>

I dismiss without prejudice all of Saunders' claims against the Doe defendants. Saunders lists six Doe defendants in the caption of his complaint and defines them as correctional officers at Osborn who, along with Lieutenant Busha, caused excessive force to be used on Saunders. *See* Compl., Doc. No. 1, at ¶¶ 3–9. However, Saunders never refers to any Doe defendant in the substantive allegations in his complaint. *See id.* at ¶¶ 10–26. To be sure, Saunders refers to other unnamed correctional officers who *may* be some of the Doe defendants.[5] As it is, though,

---

[4] More specifically, Saunders seeks $500,000 against Lieutenant Busha and $200,000 against each Doe defendant. *See* Compl., Doc. No. 1, at ¶ 32.

[5] *See, e.g.*, Compl., Doc. No. 1, at ¶ 10 (alleging that two correctional officers in addition to Lieutenant Busha stopped Saunders in December 2020), *id.* at ¶ 16 (Block officer in F-Block), *id.* at ¶ 17 (nurse), *id.* at ¶ 18 ("the staff"); *id.* at ¶ 19 ("Lt. Busha and his correctional officers"); *id.* at ¶ 20 ("Lt. Busha, and the other correctional officers"); *id.* at ¶ 22 (unidentified "correctional officers"); *id.* at ¶ 24 ("[a]ll correctional officers involved"); *id.* at ¶ 25 (explaining that during his medical exam he was always "surrounded by at least (3) correctional officers").

5

Saunders' complaint does not elucidate who the Doe defendants are or what they might have done. I am left guessing.

First, I dismiss without prejudice Saunders' federal law claims against the Doe defendants in their individual capacities. That is because Saunders has not alleged that any Doe defendant was personally involved in the deprivation of any of Saunders' constitutional rights. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (cleaned up). For the reasons I have already described, Saunders has failed to allege that any Doe defendant was personally involved in a constitutional violation in this case.

Second, I dismiss without prejudice Saunders' federal law claims against the Doe defendants in their official capacities. Saunders cannot recover damages from the Doe defendants—no matter who they are—in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166–68 (1985). The only prospective injunctive relief that Saunders seeks is mental health treatment. *See* Compl., Doc. No. 1, at ¶ 31. But that request cannot support an official capacity suit against the Doe defendants. First, because Saunders has alleged no facts whatsoever regarding any of the Doe defendants, Saunders has not plausibly alleged that the injunctive relief he seeks—mental health treatment—is "within the scope of any of the" Doe defendants' authority "to grant." *Davis v. Conn. Corr. Managed Health Care*, 2017 WL 20910, at *2 (D. Conn. Jan. 2, 2017). Second, "[a] plaintiff seeking injunctive [] relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983)). Here, without knowing who

6

the Doe defendants are, it is not possible to conclude that any Doe defendant is continually (or was ever) denying Saunders mental health treatment. Thus, I dismiss Saunders' official capacity claims against the Doe defendants.

Finally, because no federal law claims are currently proceeding against the Doe defendants, I will not exercise supplemental jurisdiction over Saunders' state law claims for assault, battery, and intentional infliction of emotional distress ("IIED") against the Doe defendants. *See* 28 U.S.C. § 1367(c); *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006) ("[U]nder 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction."). As described below with respect to Lieutenant Busha, though, if Saunders submits an amended complaint plausibly alleging that certain Doe defendants engaged in constitutional violations, I will likely exercise supplemental jurisdiction over Saunders' state law claims against the Doe defendants.

In sum, I dismiss without prejudice all claims against the Doe defendants. Saunders may submit an amended complaint to remedy the issues that I have identified. Saunders should understand that, even if he cannot identify the Doe defendants by name, he must explain with consistency who each Doe defendant is and what claims he asserts against each Doe defendant.

    B.    <u>Eighth Amendment Claims</u>

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *See Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Construed liberally, Saunders alleges four different theories of Eighth Amendment liability. In my view, only one survives initial review.

        1.    Excessive Force[6]

---

[6] Although Saunders repeatedly mentions the Fourth Amendment in his complaint in connection with his excessive force claim, only the Eighth Amendment can support such a claim. *See Bonilla v. Jaronczyk*, 354 F. App'x 579, 581 (2d Cir. 2009) ("While claims of excessive force in the course of an arrest, investigatory stop, or

7

"Although not every malevolent touch by a prison guard gives rise to a federal cause of action, inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (cleaned up). To state an Eighth Amendment claim based on an alleged use of excessive force, "an inmate must allege two elements: (1) a sufficiently serious use of force (the objective element) (2) that has been inflicted for malicious and sadistic reasons rather than in a good-faith effort to maintain or restore discipline (the subjective element)." *Scozzari v. Tantillo*, 2020 WL 5118018, at *2 (D. Conn. Aug. 31, 2020). "Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene." *Id.*

Saunders has plausibly alleged that Lieutenant Busha subjected him to excessive force in violation of the Eighth Amendment. Saunders easily satisfies the objective element: Saunders alleges that Lieutenant Busha repeatedly maced him in the face even though he was compliant and was, in fact, hand-cuffed and shackled. And Saunders satisfies the subjective element: Saunders alleges that Lieutenant Busha had a personal vendetta against him stemming from an unpleasant interaction in December 2020. Thus, Saunders' Eighth Amendment claim for excessive force may proceed against Lieutenant Busha in his individual capacity for damages.

However, I **dismiss** Saunders' Eighth Amendment excessive force claim against Lieutenant Busha in his official capacity. Again, Saunders cannot recover damages from Lieutenant Busha in his official capacity. *See Graham*, 473 U.S. at 166–68. The only injunctive relief that Saunders seeks is mental health treatment. *See* Compl., Doc. No. 1, at ¶ 31. But

---

other seizure of a free citizen should be analyzed under the Fourth Amendment, post-conviction excessive force claims . . . are properly considered under the Eighth Amendment.") (cleaned up).

Saunders may not "rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Deshawn E.*, 156 F.3d at 344. Here, no facts suggest that Lieutenant Busha is continually (or was ever) denying Saunders mental health treatment. Because Saunders' claim against Lieutenant Busha concerns only past actions—that is, Lieutenant Busha's use of excessive force on January 21, 2021—Saunders "lacks standing to bring a claim for injunctive relief against" Lieutenant Busha. *Boland v. Wilkins*, 2019 WL 1596572, at *4 (D. Conn. Apr. 15, 2019).

2. Conditions of Confinement

Saunders claims that he was subjected to an unconstitutional condition of confinement in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care" and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (cleaned up). To state an Eighth Amendment claim based on unlawful conditions of confinement, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessit[y]" or a "substantial risk of serious harm." *Id.* at 834 (cleaned up). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent; that is, the officials must have known that the plaintiff faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligence" is insufficient. *Id.* at 835. Rather, the subjective element

requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

Even construing Saunders' complaint liberally, as I must, he has not alleged a plausible Eighth Amendment claim based on his conditions of confinement. In Count Two (his conditions of confinement claim), Saunders claims that the Defendants "used excessive force, and [a]pplied the excessive force against the plaintiff in violation of my 8th. Amend. Rights of unconstitutional condition of confinement . . . ." Compl., Doc. No. 1, at ¶ 28. Thus, even on Saunders' own account, his conditions of confinement claim is really an excessive force claim. Indeed, I am unable to discern what condition of confinement could form the basis of Saunders' claim because his complaint does not focus on any. Thus, Saunders' conditions of confinement claim is **dismissed** pursuant to 28 U.S.C. 1915A(b)(1).

3. "Cruel and Unusual Punishment"

In Count Three, Saunders alleges that the Defendants "caused the plaintiff cruel and unusual punishment by spraying the plaintiff in the face with mace." Compl., Doc. No. 1, at ¶ 29. To be sure, the Eighth Amendment prohibits cruel and unusual punishment. *See* U.S. Const. amend. VIII. But to evaluate Saunders' claim, it is necessary to understand the theory behind it. *Cf. Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (describing the "three basic theories pursuant to which inmates customarily bring Eighth Amendment claims"). The theory Saunders outlines here is a theory of excessive force: I have already addressed that theory above. Thus, I **dismiss** Saunders' complaint to the extent that it alleges any free-standing Eighth Amendment "cruel and unusual punishment" claim.

4. Deliberate Indifference to Health and Safety

10

At one point, Saunders mentions the phrase "deliberate indifference." *See* Compl., Doc. No. 1, at ¶ 25 (claiming that the Defendants' behavior was "in violation of plaintiffs Eighth Amendment Rights of cruel and unusual punishment, unconstitutional condition of confinement, Excessive force, Assault and battery, deliberate Indifference . . . which the plaintiff was injured indeed."). It is difficult to understand what Saunders means. Some allegations in the complaint might support a claim for deliberate indifference to mental health. As already discussed, "[t]o state a claim for deliberate indifference under the Eighth Amendment, an inmate must demonstrate both an objective and subjective element." *Carter v. Doe*, 2021 WL 2186239, at *3 (D. Conn. May 28, 2021). Under certain circumstances, deliberate indifference to an inmate's mental health can amount to an Eighth Amendment violation. *See id.* at *5 (citing cases). Here, Saunders claims that he repeatedly asked to see a mental health professional, but he was not treated. *See, e.g.*, Compl., Doc. No. 1, at ¶¶ 14, 18. However, none of those allegations is in any way connected to Lieutenant Busha. And, as described above, no allegations in Saunders' complaint regard any of the Doe defendants, at least so far as I can tell. Thus, Saunders' complaint does not plausibly allege an Eighth Amendment claim based on deliberate indifference to his health and safety. However, I **dismiss** Saunders' deliberate indifference claim without prejudice, so Saunders can attempt to remedy the defects I have described above.

   C.  First Amendment Retaliation

A claim of First Amendment retaliation has three elements: The plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). An "adverse action" is "retaliatory conduct that

would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (cleaned up). Courts in the Second Circuit "approach prisoner retaliation claims 'with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

Saunders has not plausibly alleged a First Amendment retaliation claim. Regarding constitutionally-protected conduct, Saunders twice suggests that his hunger strike was protected activity. *See* Compl., Doc. No. 1, at ¶ 18 (explaining that he was "within my first Amendment Right of Freedom of speech to hunger strike"); *id.* at ¶ 25 (asserting that "despite me exercising my first Amendment Rights to hunger strike peacefully[,] defendants did not have to use mace on me"). And the only possible "adverse action" that Saunders alleges is his being beaten up and maced by Lieutenant Busha and some other (unidentified) correctional officers on January 21, 2021.

It is possible that Saunders' hunger strike amounted to protected activity. Several courts have held that, when "intended to convey a particularized message," a hunger strike might be constitutionally protected. *See Brown v. Graham*, 2010 WL 6428251, at *16 (N.D.N.Y. Mar. 30, 2010) (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989)); *see also Arredondo v. Drager*, 2016 WL 3755958, at *15–16 (N.D. Cal. July 14, 2016) (surveying case law). Here, Saunders claims that his hunger strike was intended to convey several messages. *See* Compl., Doc. No. 1, at ¶ 14.

I need not decide, though, whether Saunders' hunger strike amounted to protected activity because, even if it did, Saunders' First Amendment retaliation claim fails. There is no

12

plausible causal connection between Saunders' hunger strike and Lieutenant Busha's actions. As Saunders' complaint makes clear, a feud between Saunders and Lieutenant Busha began in December 2020, which was *well before* Saunders began his hunger strike on January 18, 2021. And Saunders himself alleges that Lieutenant Busha's actions on January 21, 2021 were in retaliation for the unpleasant encounter in December 2020, not the hunger strike: Saunders writes that "Lt. Busha took out his [r]evenge and [r]etaliated against me from the Dec. Incident." *Id.* at ¶ 24. For that reason, I **dismiss** Saunders' First Amendment retaliation claim pursuant to 28 U.S.C. § 1915A(b)(1).

### D. State Law Claims

Construed liberally, Saunders asserts state law claims for (1) assault, (2) battery, and (3) IIED. *See* Compl., Doc. No. 1, at 1 (introductory paragraph mentions "[a]ssault and battery"); *id.* at ¶ 30 (Count Four explicitly claims IIED). "In Connecticut, a civil assault is defined as the intentional causing of imminent apprehension of harmful or offensive contact with another." *Rodriguez v. McCormick*, 2021 WL 83503, at *10 (D. Conn. Jan. 11, 2021) (cleaned up). "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* (cleaned up). To prove an IIED claim, the plaintiff must show "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Abrams v. Waters*, 2018 WL 691717, at *15 (D. Conn. Feb. 2, 2018) (quoting *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000)).

13

A federal district court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Put differently, "a district court has supplemental jurisdiction over an entire action, including state law claims, whenever the federal law claims and state law claims in the case 'derive from a common nucleus of operative fact.'" *Gulley v. Mulligan*, 2018 WL 4516677, at *4 (D. Conn. Sept. 20, 2018).

I will exercise supplemental jurisdiction over Saunders' assault, battery, and IIED state law claims against Lieutenant Busha. Saunders' assault and battery claims are directly related to Saunders' Eighth Amendment excessive force claim, which will proceed against Lieutenant Busha in his individual capacity for damages. Indeed, courts routinely exercise supplemental jurisdiction over an inmate's assault and battery claims when that inmate's Eighth Amendment excessive force claim regarding the same incident survives initial review. *See, e.g.*, *id.* Similarly, courts frequently exercise supplemental jurisdiction over a prisoner's IIED claim when an underlying excessive force claim survives. *See, e.g.*, *Pena v. Aldi*, 2019 WL 2193465, at *8 (D. Conn. May 21, 2019); *see also Abrams*, 2018 WL 691717, at *15 (holding that being "maced and then slammed to the floor" can state a plausible claim for IIED).

## ORDERS

(1) The following claims survive my initial review: (a) Saunders' Eighth Amendment excessive force claim against Lieutenant Busha in his individual capacity for damages, and (b) Saunders' state law claims (assault, battery, and intentional infliction of emotional distress) against Lieutenant Busha for damages. All other claims and all other defendants are

DISMISSED. If Saunders believes he can allege facts to cure the deficiencies identified in this ruling, he may file an amended complaint within **thirty (30) days** from the date of this order.

(2) The clerk shall verify the current work address for Lieutenant Busha with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to him at his confirmed address within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If the defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on the defendant, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(4) Lieutenant Busha shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If Lieutenant Busha chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7)  All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8)  According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)  If Saunders changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough just to put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify the defendants or defense counsel of his new address.

(10)  Saunders shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on defense counsel by regular mail.

So ordered.

Dated at Bridgeport, Connecticut, this 28th day of June 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge